UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| FARKHONDEH KHALILI-ARAGHI, | Case No. 23-cv-00696-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS** |
| RENA BITTER, et al., | Re: ECF No. 13 |
| Defendants. | |

## INTRODUCTION

In 2013, the plaintiff Farkhondeh Khalili-Araghi, who is seventy-seven years old and in ailing health, filed a visa petition for her daughter Fatemeh Firouzeh Iran Nejad, who lives in Iran. In March 2021, Ms. Iran Nejad was deemed "documentarily qualified," meaning qualified "to apply formally for an immigrant visa." 22 C.F.R. § 40.1(h). But the next step in the process for Ms. Iran Nejad to apply — an interview with a consular officer at the U.S. Embassy in Abu Dhabi — still hasn't happened. The plaintiff thus filed a petition for a writ of mandamus under the Administrative Procedure Act (APA) and the Mandamus Act to compel the U.S. Department of State to take action

on Ms. Iran Nejad's visa petition. The defendants are State Department officials, including the Chargé d'Affaires of the embassy in Abu Dhabi.[1]

The defendants moved for summary judgment on the grounds that they have no duty to schedule Ms. Iran Nejad's interview, and if even they did have that duty, their delay has not been unreasonable.[2] The court grants the motion on both grounds.

## STATEMENT

### 1. Factual Background

The plaintiff is a U.S. citizen who has lived in the Bay Area since 1993.[3] Her daughter, Ms. Iran Nejad, received a green card in March 2004 and lived in the United States for a time.[4] She returned to Tehran in 2008, though, to care for her elderly and ill aunt. In the interim, she lost her green card and then was denied a visitor visa in October 2012. Also in 2012, the plaintiff's son (her only other child) died.[5] The plaintiff has traveled to Tehran at times to see her daughter, but is now in failing health and cannot make the trip. "[C]ompleting [her] normal everyday tasks ha[s] become very difficult."[6] She has "brothers, sisters, and [an] elderly mom" who live in the Bay Area, but Ms. Iran Nejad is "[her] only child and [her] caring companion" and is "the only family member who is separated from [her] family."[7]

On June 13, 2013, after Ms. Iran Nejad was denied a visitor visa, the plaintiff filed a visa petition (for a green card) for Ms. Iran Nejad with U.S. Citizenship and Immigration Services.[8]

---

[1] Pet. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 13.

[3] Khalili-Araghi Decl. – ECF No. 15-1 at 2 (¶¶ 2–3, 11).

[4] *Id.* at 2–3 (¶ 11).

[5] *Id.* at 3 (¶¶ 12–14).

[6] *Id.* at 3 (¶ 15), 4 (¶¶ 17–18).

[7] *Id.* at 3 (¶ 16), 4 (¶¶ 20–21).

[8] *Id.* at 2 (¶ 4).

That petition was approved on August 28, 2014.[9] On September 25, 2014, the plaintiff received an email from the National Visa Center saying the case was "not eligible for further processing."[10] But in October 2019, the plaintiff received a "Notice of Immigrant Visa Case Creation" and the "case was assigned Department of State Visa Application Number ABD2014766017."[11] On March 26, 2021, the case was deemed "documentarily qualified."[12] The next step is an immigrant visa interview, which hasn't been scheduled yet.[13]

The immigrant visa applicant pool at the U.S. Embassy in Abu Dhabi "consists of exclusively third-country nationals, primarily from Afghanistan, India, Iran, Iraq, Jordan, Pakistan, Philippines, and Syria." Since the suspension of immigrant-visa processing at the embassies in Kabul and Baghdad, the embassy in Abu Dhabi has provided visa services to Afghan and Iraqi nationals.[14] Also, from March 2020 until June 2021, consular services at the embassy were suspended or slowed due to the COVID-19 pandemic, resulting in a backlog.[15] During this time and still today, the embassy has prioritized visas for healthcare workers.[16] And "[t]hroughout Fiscal Year 2022, the [embassy] prioritized the processing of visa services for certain individuals who were evacuated from Afghanistan." The embassy is still prioritizing Afghan nationals.[17] "For Iranian nationals, the [embassy] must account for the availability of Farsi speaking consular officers when allocating [immigrant visa] services[.]"[18]

The State Department's National Visa Center "uses the date on which a case was documentarily complete to determine the order in which cases are scheduled for [interview]

---

[9] *Id.* (¶ 5); Carilli Decl. – ECF No. 13-1 at 2 (¶ 3).

[10] Khalili-Araghi Decl. – ECF No. 15-1 at 2 (¶ 6) (cleaned up).

[11] *Id.* (¶ 7).

[12] *Id.* (¶ 8); Carilli Decl. – ECF No. 13-1 at 2 (¶ 4).

[13] Khalili-Araghi Decl. – ECF No. 15-1 at 2 (¶ 9).

[14] Chapman Decl. – ECF No. 13-3 at 3 (¶ 5).

[15] *Id.* at 3–4 (¶ 8).

[16] *Id.* at 4 (¶ 11).

[17] *Id.* (¶ 10).

[18] *Id.* (¶ 9).

appointments in the event demand exceeds processing capacity."[19] As of June 29, 2023, there were 174 documentarily qualified applicants ahead of Ms. Iran Nejad who were "pending scheduling of an interview to make a visa application at the U.S. Embassy in Abu Dhabi."[20] There is also a backlog of seventy-two Afghan applicants seeking an immigrant visa pursuant to the Afghan Allies Protection Act of 2009.[21]

**2. Procedural History**

The plaintiff filed a petition for a writ of mandamus to compel the defendants to act on and adjudicate her daughter's visa application. She asserts two claims: (1) violation of the APA, 5 U.S.C. § 706(1), for "unlawfully withholding or unreasonably delaying action on this visa application," and (2) violation of the Mandamus Act, 28 U.S.C. § 1361, on essentially the same grounds.[22]

The court has subject-matter jurisdiction. 28 U.S.C. § 1331. All parties consented to magistrate-judge jurisdiction.[23] *Id.* § 636(c). The court can decide the motion without oral argument. N.D. Cal. Civ. L.R. 7-1(b).

**STANDARD OF REVIEW**

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

---

[19] Austin Decl. – ECF No. 13-2 at 2–3 (¶ 2).

[20] *Id.* at 3–4 (¶ 4).

[21] *Id.* at 3 (¶ 3).

[22] Pet. – ECF No. 1.

[23] Consents – ECF Nos. 6, 9.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the non-moving party does not produce evidence to show a genuine issue of material fact, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the non-moving party and draws all factual inferences in the non-moving party's favor. *E.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).

# ANALYSIS

Under the APA, the court may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Similarly, under the Mandamus Act, district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Because mandamus relief and relief under the APA are in essence the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (cleaned up).

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 1135–36 (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). "Thus, a court may compel agency action under the APA when the agency (1) has a clear, certain, and mandatory duty, and (2) has unreasonably delayed in performing such duty." *Id.* at 1135 (cleaned up).

The court first addresses the plaintiff's evidentiary objections and then the two issues relevant to her APA claim.

## 1. Evidentiary Objections

The plaintiff contends that the defendants' motion "relies only on a facially incomplete administrative record, which is objectionable under Rule 56(c)(2), as well as declarations that both lack specificity and fail to substantiate that no genuine issues of material fact exist with respect to the specific issue presented, as required by Rule 56(c)(1)."[24] The record is sufficient.

First, the plaintiff is not entitled to additional discovery. As discussed below, the issues are mostly legal ones. The relevant facts are few and the parties' declarations are sufficient. The plaintiff has thus not carried her burden "to proffer sufficient facts to show that the evidence

---

[24] Opp'n – ECF No. 15 at 9–13.

sought exists, and that it would prevent summary judgment." *Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *5 (N.D. Cal. Jan. 20, 2022) (cleaned up); Fed. R. Civ. P. 56(d).

Second, the plaintiff complains that the Carilli declaration does not include the entire administrative record or all of the dates involved in Ms. Iran Nejad's visa process, such as "when the [National Visa Center] created a case for visa processing." But again, the parties' declarations are sufficient to resolve the dispositive issues. Fed. R. Civ. P. 56(d) (to establish a need for more information, the nonmovant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"); *Poursohi v. Blinken*, No. 21-cv-01960-TSH, 2021 WL 5331446, at *6 n.3 (N.D. Cal. Nov. 16, 2021) (a certified administrative record may not exist in this type of case).

Third, Rule 56(c) does not require that a complete administrative record be provided in support of this motion. "The court need consider only the cited materials," and then the court determines whether the movant has satisfied its summary-judgment burden. *See* Fed. R. Civ. P. 56(c)(3).

Fourth, the plaintiff argues that the Carilli declaration, which relates certain information from the administrative record, is inadmissible hearsay because the declarant lacks personal knowledge and merely searched the Consular Consolidated Database for the relevant information and did not enter information into the database. Fed. R. Evid. 802; Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). But at the summary-judgment stage, courts "do not focus on the admissibility of the evidence's form" and instead "focus on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). As the defendants point out, "the dates attested to the declaration, which are kept in the regular course of business of the Department, could be presented in an admissible form at trial."[25]

---

[25] Reply – ECF No. 19 at 11.

**2. Whether the Defendants Have a Duty to Schedule Ms. Iran Nejad's Consular Interview**

The first substantive issue is whether the defendants have a "clear, certain, and mandatory duty" to act on Ms. Iran Nejad's immigrant visa petition. *Vaz*, 33 F.4th at 1135. The plaintiff seeks an immigrant visa for an "immediate relative," her daughter. 8 U.S.C. § 1151(b)(2)(A)(i); *Young v. Trump*, 506 F. Supp. 3d 921, 928–29 (N.D. Cal. 2020) (fully describing the process, including with reference to the State Department's Foreign Affairs Manual). Thus far, her daughter has had her visa petition approved and been deemed "documentarily qualified," meaning qualified "to apply formally for an immigrant visa." 22 C.F.R. § 40.1(h). To apply for an immigrant visa, she must "personally appear[] before a consular officer." *Id.* § 40.1(l)(2). The exact issue is thus whether the defendants have a nondiscretionary duty to allow those who have filed an immigrant visa petition and been deemed documentarily qualified to apply for an immigrant visa via a consular interview.

The plaintiff contends that this duty comes from two sources: 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(a).[26] Section 1202(b), which governs the documentation a person applying for an immigrant visa must furnish to the consular officer, provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Section 42.81(a) governs the procedure for refusing immigrant visas and provides that "[w]hen a visa application has been properly completed and executed before a consular officer," the officer "must issue the visa, refuse the visa," or (in the case of certain outstanding orders) "discontinue granting the visa." 22 C.F.R. § 42.81(a).

First, 8 U.S.C. § 1202(b) does not create the requisite duty. "[W]here, as here, the applicant has not yet appeared for an interview," § 1202(b) does not create any duty. *Taj v. U.S. Dep't of State*, No. CV 22-1087 (RDM), 2022 WL 17250302, at *5 (D.D.C. Nov. 28, 2022). This is because the statute requires only that "immigrant visa applications" be adjudicated, and "the relevant regulations consider an applicant to have actually made or filed a visa application only when she 'personally appear[s] before a consular officer' for an interview." *Id.* (cleaned up)

---

[26] Opp'n – ECF No. 15 at 5.

(quoting 22 C.F.R. § 40.1(l)(2)). And practically, "[i]nterviews are scheduled based on, among other things, the capacity of the consular offices and embassies." *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 15 (D.D.C. 2022). "If a post does not have capacity to interview someone . . . it cannot do so." *Id.* In any case, § 1202(b) lacks a "clear [and] certain" duty, or in other words "'a specific, unequivocal command' that the State Department must schedule [a] particular interview and therefore allow [the] visa application to be processed." *Zeynali v. Blinken*, 630 F. Supp. 3d 208, 213 (D.D.C. 2022) (quoting *Norton*, 542 U.S. at 64).

Second, § 42.81(a) similarly lacks a clear and certain requirement for the State Department to conduct a consular interview and thereby accept a visa application (from a person who thus far has filed only a visa petition). Instead, the regulation's duty is expressly limited to after the interview. 22 C.F.R. § 42.81(a); *Young*, 506 F. Supp. 3d at 929 ("Once the interview is complete, the [Foreign Affairs Manual] and the [Immigration and National Act] direct consular officers to adjudicate the visa application.") (citing § 1202(b) and § 42.81(a)); *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.") (citing § 42.81(a)); *Preston v. Ky. Consular Ctr.*, No. 6:22-CV-015-CHB, 2022 WL 3593052, at *9–11 (E.D. Ky. Aug. 22, 2022) (analyzing § 42.81(a) and related regulations in the diversity-visa context).

In sum, the State Department does not have a nondiscretionary duty to act on an immigrant visa petition as opposed to an immigrant visa application.

The plaintiff cites cases holding that "§ 1202(b) imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications."[27] *See, e.g.*, *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021). And it is true that in those cases, the plaintiffs had not yet had consular interviews. *Id.* at 216. But "[t]hose courts opined on the issue in regard to fiscal year 2021, during which the State Department declined to schedule interviews for diversity visa selectees for four months based on an interpretation of a proclamation from then-President

---

[27] *Id.* at 14.

Trump." *Babamuradova*, 633 F. Supp. 3d at 15. "Such extreme circumstances are not present here." *Id.*

The plaintiff also contends that because the defendants are regularly scheduling consular interviews all over the world, the "State Department . . . perceive[s] that it has a statutory duty to adjudicate visas."[28] But the issue here is whether the relevant statutes and regulations impose "a clear, certain, and mandatory duty." *Vaz*, 33 F.4th at 1135. In the context of an individual visa petition that has not yet proceeded to the application stage, neither § 1202(b) nor § 42.81(a) imposes the requisite duty to schedule an interview. This result is logical, given the demands placed on "the capacity of the consular offices and embassies." *Babamuradova*, 633 F. Supp. 3d at 15.

### 3. Whether the Defendants Have Unreasonably Delayed in Scheduling the Interview

The defendants are entitled to summary judgment based on their lack of a nondiscretionary duty to schedule Ms. Iran Nejad's interview. *Vaz*, 33 F.4th at 1135. In any event, even if there was such a duty, the defendants have not "unreasonably delayed in performing [it]." *Id.*

Courts "look to the so-called *TRAC* factors" to assess whether agency action has been unreasonably delayed under the APA. *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). These factors are:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (cleaned up). The first factor is the most important, but it isn't determinative and in

---

[28] *Id.* at 15.

this circuit, courts must consider all of the factors. *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). Also, "[c]ourts measure the period of delay from the last government action to the issuance of the opinion." *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022).

Here, the delay is measured from March 2021, when Ms. Iran Nejad was deemed documentarily qualified.[29] The interests prejudiced by the delay are substantial, given the plaintiff's health. *Borzouei v. Bitter*, No. 22-cv-872-MMA (KSC), 2022 WL 17682659, at *5 (S.D. Cal. Dec. 14, 2022). But the other factors weigh heavily in favor of the defendants. For one, courts have granted leeway to the State Department, given the COVID-19 pandemic context. *See, e.g.*, *id.* Healthcare workers are still being given priority, as are Afghan nationals. More generally, in the immigrant-visa context, delays of several years longer than that at issue here are often deemed reasonable. *Kapoor*, 2022 WL 181217, at *4 (collecting cases). And "as many courts have acknowledged," allowing one applicant "to 'jump the queue'" in this context "would be unjust." *Borzouei*, 2022 WL 17682659, at *5.

The court recognizes the plaintiff's concern that she has not received discovery in this case and analyzing the *TRAC* factors can be fact-intensive.[30] Still, as shown in the preceding paragraph, courts have often relied on certain readily identifiable facts. Fed. R. Civ. P. 56(d) (to establish a need for more information, the nonmovant must "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). Also relevant is the fact that "Congress has given the State Department and other agencies wide discretion in the area of immigration processing." *Poursohi*, 2021 WL 5331446, at *5 (cleaned up). It is too early here to call the defendants' delay unreasonable (if they even had a nondiscretionary duty to schedule the interview).

---

[29] Carilli Decl. – ECF No. 13-1 at 2 (¶ 4).
[30] Opp'n – ECF No. 15 at 17–20.

# CONCLUSION

The court grants the defendants' motion for summary judgment and will separately issue a judgment. This resolves ECF No. 13.

**IT IS SO ORDERED.**

Dated: September 13, 2023

LAUREL BEELER
United States Magistrate Judge